**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GARY HANLEY on behalf of himself and others similarly situated,<br>    Plaintiff,<br><br>    v.<br><br>GREEN TREE SERVICING, LLC,<br>    Defendant. | )<br>)  1:12-cv-4158<br>)<br>)  Judge Castillo<br>)  Magistrate Judge Nolan<br>)<br>)  JURY DEMANDED<br>)<br>) |

**PLAINTIFF'S NOTICE OF ADDITIONAL AUHTORITY
IN OPPOSITION TO GREEN TREE'S MOTION TO DISMISS**

Plaintiff hereby provides the Court with notice of *Chesbro v. Best Buy Stores, L.P.*, --- F.3d ----, 2012 WL 4902839 (9th Cir. Oct. 17, 2012), which bears on the issue of whether a consumer may revoke his consent to be called with an automatic telephone dialing system or prerecorded voice.

Respectfully submitted,

/s/Alexander H. Burke

Alexander H. Burke
**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com

--- F.3d ----, 2012 WL 4902839 (C.A.9 (Wash.)), 12 Cal. Daily Op. Serv. 11,702, 2012 Daily Journal D.A.R. 14,361
**(Cite as: 2012 WL 4902839 (C.A.9 (Wash.)))**

United States Court of Appeals,
Ninth Circuit.
Michael CHESBRO, Plaintiff–Appellant,
v.
BEST BUY STORES, L.P., Defendant–Appellee.

No. 11–35784.
Argued and Submitted Aug. 8, 2012.
Filed Oct. 17, 2012.

**Background:** Customer filed putative class action in state court alleging that series of automated telephone calls placed to his home by retailer violated Telephone Consumer Protection Act (TCPA) and Washington Automatic Dialing and Announcing Device Act (WADAD). Retailer removed action under Class Action Fairness Act (CAFA). The United States District Court for the Western District of Washington, Richard A. Jones, J., granted summary judgment in retailer's favor. Customer appealed.

**Holdings:** The Court of Appeals, Noonan, Circuit Judge, held that:
(1) deference was due to Federal Communications Commission (FCC) report and order prohibiting "dual purpose" calls;
(2) retailer's automated telephone calls to customer constituted unsolicited advertisements, telephone solicitations, and telemarketing, and were prohibited by TCPA;
(3) retailer's automated telephone calls to customer constituted telemarketing under "do not call (DNC)" regulation;
(4) retailer's automated telephone calls to customer constituted unsolicited advertisements, telephone solicitations, and telemarketing, and were prohibited by WADAD and WCPA; and
(5) retailer's automated telephone calls to customer constituted telemarketing under Washington's "do not call (DNC)" provision.

Reversed and remanded.

West Headnotes

**[1] Telecommunications 372 ⌕910**

372 Telecommunications
   372III Telephones
      372III(F) Telephone Service
         372k899 Judicial Review or Intervention
            372k910 k. Standard and scope of review. Most Cited Cases

Deference was due to Federal Communications Commission (FCC) report and order, issued pursuant to delegated authority under Telephone Consumer Protection Act (TCPA), prohibiting "dual purpose" calls, those with both a customer service or informational component as well as marketing component. 47 U.S.C.A. § 227; 47 C.F.R. § 64.1200(a)(2)(iii) (2011).

**[2] Telecommunications 372 ⌕888**

372 Telecommunications
   372III Telephones
      372III(F) Telephone Service
         372k888 k. Advertising, canvassing and soliciting; telemarketing. Most Cited Cases

Retailer's automated telephone calls to customer who had repeatedly and expressly asked not to be contacted, urging customer to "redeem" his points under reward program, directing him to Internet website where he could further engage with program, and thanking him for "shopping at [retailer]," constituted unsolicited advertisements, telephone solicitations, and telemarketing, and were prohibited by TCPA; although good, product, or service had not been explicitly mentioned, calls had been aimed at encouraging listeners to engage in future commercial transactions with retailer to purchase its goods. 47 U.S.C.A. § 227; 47 C.F.R. § 64.1200(a)(2)(iii) (2011).

**[3] Telecommunications 372 ⌕888**

372 Telecommunications
   372III Telephones

--- F.3d ----, 2012 WL 4902839 (C.A.9 (Wash.)), 12 Cal. Daily Op. Serv. 11,702, 2012 Daily Journal D.A.R. 14,361
**(Cite as: 2012 WL 4902839 (C.A.9 (Wash.)))**

      372III(F) Telephone Service
          372k888 k. Advertising, canvassing and soliciting; telemarketing. Most Cited Cases

    Retailer's automated telephone calls to customer who had repeatedly and expressly asked not to be contacted, urging customer to "redeem" his points under reward program, directing him to Internet website where he could further engage with program, and thanking him for "shopping at [retailer]," constituted telemarketing under federal "do not call (DNC)" regulation, since calls encouraged recipients to engage in future purchasing activity. 47 C.F.R. § 64.1200(d)(3), (f)(10) (2011).

**[4] Antitrust and Trade Regulation 29T ⇌224**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
      29TIII(C) Particular Subjects and Regulations
        29Tk224 k. Telecommunications; telemarketing. Most Cited Cases

**Telecommunications 372 ⇌888**

372 Telecommunications
    372III Telephones
      372III(F) Telephone Service
        372k888 k. Advertising, canvassing and soliciting; telemarketing. Most Cited Cases

    Retailer's automated telephone calls to customer who had repeatedly and expressly asked not to be contacted, urging customer to "redeem" his points under reward program, directing him to Internet website where he could further engage with program, and thanking him for "shopping at [retailer]," constituted unsolicited advertisements, telephone solicitations, and telemarketing, and were prohibited by Washington Automatic Dialing and Announcing Device Act (WADAD) and Washington Consumer Protection Act (WCPA); although good, product, or service had not been explicitly mentioned, calls had been aimed at encouraging listeners to engage in future commercial transactions with retailer to purchase its goods. West's RCWA 80.36.400.

**[5] Telecommunications 372 ⇌888**

372 Telecommunications
    372III Telephones
      372III(F) Telephone Service
        372k888 k. Advertising, canvassing and soliciting; telemarketing. Most Cited Cases

    Retailer's automated telephone calls to customer who had repeatedly and expressly asked not to be contacted, urging customer to "redeem" his points under reward program, directing him to Internet website where he could further engage with program, and thanking him for "shopping at [retailer]," constituted telemarketing under Washington's "do not call (DNC)" provision, since calls encouraged recipients to engage in future purchasing activity. West's RCWA 80.36.390(3)(a).

Kimberlee L. Gunning, Beth E. Terrell, Terrell Marshall Daudt & Willie PLLC, Seattle, WA; and Rob Williamson, Kim Williams, Williamson & Williams, Bainbridge Island, WA, for the plaintiff-appellant.

Anne M. Lockner, Minneapolis, MN, for the defendant-appellee.

Appeal from the United States District Court for the Western District of Washington, Richard A. Jones, District Judge, Presiding. D.C. No. 2:10–cv–00774–RAJ.

Before JOHN T. NOONAN, SUSAN P. GRABER, and JOHNNIE B. RAWLINSON, Circuit Judges.

## OPINION

NOONAN, Circuit Judge:

    **\*1** Michael Chesbro, on behalf of himself and a class of similarly situated plaintiffs, argues that a series of automated telephone calls placed to his home by Best Buy violated the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, and the Washington Automatic Dialing and

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2012 WL 4902839 (C.A.9 (Wash.)), 12 Cal. Daily Op. Serv. 11,702, 2012 Daily Journal D.A.R. 14,361
**(Cite as: 2012 WL 4902839 (C.A.9 (Wash.)))**

Announcing Device Act ("WADAD"), [Wash. Rev.Code § 80.36.400](). The district court granted summary judgment in Best Buy's favor. We reverse and remand for further proceedings.

*Factual and Procedural History*

Plaintiff Michael Chesbro purchased a computer from Best Buy in 2008. At the time of the purchase, he signed up for a no-interest payment plan to finance the cost of the computer. He filled out paperwork and provided his contact information, including his telephone number. The parties dispute whether, at the time of purchase and when opting for the credit plan, Chesbro enrolled in Best Buy's Reward Zone Program ("RZP"). Best Buy claims that it obtained his signature; Chesbro maintains that, if so, he did not know that he was being enrolled in the RZP or know what the RZP was.

The RZP allows customers to earn points toward certificates—coupons with a $5 value for every $250 spent—that can be applied toward future purchases at Best Buy. Best Buy contends that, as an RZP member, Chesbro consented to the terms of the RZP Privacy Policy, which authorizes Best Buy to contact program members with program-related communications. Best Buy states that, though RZP members may opt out of receiving marketing communications regarding the program, Best Buy may still contact members with program-related communications, such as membership information.

Chesbro received many automated "robot" calls from Best Buy following his July 2008 computer purchase. He estimates that he received "more than five, less than a dozen" calls from Best Buy during this period; he could identify the caller from the caller identification feature on his phone. During the period at issue, Chesbro maintains that he was registered on the national "Do Not Call" ("DNC") list.

On November 12, 2008, Chesbro complained to the Washington Attorney General's Office ("AGO") regarding a call that he received on November 11. Best Buy concedes that it made this November 11 automated call but argues that the call was a courtesy message alerting Chesbro to the looming expiration of his RZP certificates. The undisputed script of the call is as follows:

> Hello, this is Andrea from Best Buy Reward Zone calling for (Recipient's first and last name) to remind you that your Reward Certificates are about to expire. (Certificate amount) dollars in Reward Certificates were mailed to you on (Mail date) and they will expire if not used by (Expiration Date). If you do not have your reward certificates, you can re-print them online at myrewardzone.com. Thank you for shopping at Best Buy.

Chesbro maintains that, before filing his AGO complaint, he communicated his desire to opt out by following the prompts on the automated touch-tone dialing system. Chesbro also called the Best Buy store and asked to be put on Best Buy's internal DNC list. The customer service representatives with whom he spoke stated that they did not know what phone calls he was talking about. Chesbro specifically asked for all marketing calls to cease. In response to the complaint filed with the AGO, Best Buy agreed to place Chesbro on its DNC list.

**\*2** Seven months later, in June 2009, Chesbro received another automated phone call from Best Buy with script as follows:

> This is a very important message regarding the Best Buy Reward Zone program. We're making some changes to increase the security of the program and be more environmentally friendly. Please listen to the entire message and then go to MyRewardZone.com for details and to update your membership.
>
> The following changes take effect October 31st, 2009:
>
> • First, to help reduce paper use, reward certificates will only be available by logging onto MyRewardZone.com.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2012 WL 4902839 (C.A.9 (Wash.)), 12 Cal. Daily Op. Serv. 11,702, 2012 Daily Journal D.A.R. 14,361
**(Cite as: 2012 WL 4902839 (C.A.9 (Wash.)))**

• Second, reward certificates will no longer be transferable.

• Lastly, for the following three conditions, points will be cashed out to the $5 level and the remaining points will be forfeited:

• You will need to provide an e-mail address at MyRewardZone.com. Members who haven't provided an e-mail address will no longer be eligible to participate in the program.

• Reward Zone is becoming an annual program, which means that points no longer roll over from year-to-year[.]

• You will need to make 1 purchase every 12 months to remain in the program[.]

For full details and to make sure you're ready for these changes, go to MyRewardZone.com.

If you would like to hear this message again, press 9.

Thank you for your time—and for being a valued Reward Zone program member.

Chesbro filed a class-action complaint in Washington state court alleging federal and state violations. Best Buy removed the case to federal court under the Class Action Fairness Act of 2005, 28 U.S.C. § 1453, asserting an amount in controversy exceeding $5,000,000. Best Buy filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), which the court converted into a motion for summary judgment under Rule 12(d). The court denied Chesbro's motion for a continuance under Rule 56(d) and granted summary judgment in Best Buy's favor. This appeal followed.

We review a grant of summary judgment de novo. *See Lopez v. Smith,* 203 F.3d 1122, 1131 (9th Cir.2000)(en banc). We determine "whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.*

*TCPA Claims*

The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B)." 47 U.S.C. § 227(b)(1)(B). The parties do not dispute that these were prerecorded calls to a residential telephone line.

Paragraph (2)(B) provides that the Federal Communications Commission ("FCC") may exempt non-commercial calls and "such ... calls made for commercial purposes as ... (I) will not adversely affect the privacy rights that this section is intended to protect; and (II) do not include the transmission of any unsolicited advertisement." 47 U.S.C. § 227(b)(2)(B)(ii). " '[U]nsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission...." 47 U.S.C. § 227(a)(5).

**\*3** [1] Pursuant to its delegated authority, the FCC has exempted from the general prohibition on automated commercial calls those that both "do [ ] not include or introduce an unsolicited advertisement or constitute a telephone solicitation[,]" 47 C.F.R. § 64.1200(a)(2)(iii) (2011) (amended 2012), and do not adversely affect the privacy rights of the called party, *see In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order,* 18 FCC Rcd. 14014, 14095 ¶ 136, 2003 WL 21517853 (F.C.C. July 3, 2003) (" *2003 Report and Order* "). The FCC has determined that so-called "dual purpose" calls, those with both a customer service or informational component as well as a marketing component, are prohibited. *See 2003 Report and Order* at 14097–98 ¶¶ 140–142. The FCC explains:

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case: 1:12-cv-04158 Document #: 35 Filed: 10/29/12 Page 6 of 7 PageID #:151

Page 5

--- F.3d ----, 2012 WL 4902839 (C.A.9 (Wash.)), 12 Cal. Daily Op. Serv. 11,702, 2012 Daily Journal D.A.R. 14,361
**(Cite as: 2012 WL 4902839 (C.A.9 (Wash.)))**

The so-called "dual purpose" calls described in the record—calls from mortgage brokers to their clients notifying them of lower interest rates, calls from phone companies to customers regarding new calling plans, or calls from credit card companies offering overdraft protection to existing customers—would, in most instances, constitute "unsolicited advertisements," regardless of the customer service element to the call. The Commission explained in the *2002 Notice* that such messages may inquire about a customer's satisfaction with a product already purchased, but are motivated in part by the desire to ultimately sell additional goods or services. If the call is intended to offer property, goods, or services for sale either during the call, or in the future (such as in response to a message that provides a toll-free number), that call is an advertisement.

*Id.* ¶ 142 (footnote omitted).

Neither party argues that the interpretation set forth in the 2003 Report and Order is unreasonable or otherwise not entitled to this court's deference. We agree that our deference is due. *See Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 952–54 (9th Cir.2009) (affording deference under *United States v. Mead Corp.,* 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001), and *Skidmore v. Swift & Co.,* 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944), to the FCC's interpretation, as set forth in its 2003 and 2004 Reports, of what constitutes a "call").

Finally, the regulations contain a DNC provision stating: "Persons or entities making calls for telemarketing purposes ... must honor a residential subscriber's do-not-call request within a reasonable time...." 47 C.F.R. § 64.1200(d)(3) (2011) (amended 2012). "[T]elemarketing means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(10) (2011) (amended 2012).

"[A]pplication of the prerecorded message rule should turn, not on the caller's characterization of the call, but on the purpose of the message." *2003 Report and Order* at 14098 ¶ 141 (footnote omitted). We thus turn to the calls at issue to determine whether they demonstrate a prohibited advertising purpose.

**\*4** [2] Best Buy argues that its calls were purely informational courtesy calls to RZ members. It further maintains that, because the scripts did not explicitly reference any property, goods, or services within the meaning of 47 U.S.C. § 227(a)(5), the calls did not run afoul of the TCPA and its implementing regulations. We disagree.

We approach the problem with a measure of common sense. The robot-calls urged the listener to "redeem" his Reward Zone points, directed him to a website where he could further engage with the RZP, and thanked him for "shopping at Best Buy." Redeeming Reward Zone points required going to a Best Buy store and making further purchases of Best Buy's goods. There was no other use for the Reward Zone points. Thus, the calls encouraged the listener to make future purchases at Best Buy. Neither the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context. Any additional information provided in the calls does not inoculate them. *See 2003 Report and Order* ¶ 142.

Any assertion that Chesbro either consented to receiving these communications or that the communications were not unsolicited is unpersuasive on this summary judgment record. Chesbro repeatedly and expressly asked not to be contacted. The calls violated the TCPA and its implementing regulations.

[3] Because the calls encouraged recipients to engage in future purchasing activity, they also constituted telemarketing under the DNC regulation. *See* 47 C.F.R. § 64.1200(d)(3), (f)(10) (2011).

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2012 WL 4902839 (C.A.9 (Wash.)), 12 Cal. Daily Op. Serv. 11,702, 2012 Daily Journal D.A.R. 14,361
**(Cite as: 2012 WL 4902839 (C.A.9 (Wash.)))**

*Washington Claims*

[4] The WADAD similarly prohibits using an automatic dialing and announcing device "for purposes of commercial solicitation." Wash. Rev.Code § 80.36.400(2) (2012). "Commercial solicitation means the unsolicited initiation of a telephone conversation for the purpose of encouraging a person to purchase property, goods, or services." Wash. Rev.Code § 80.36.400(1)(b). A violation of the WADAD is automatically a violation of the Washington Consumer Protection Act ("WCPA"). *See* Wash. Rev.Code § 80.36.400(3).

[5] Washington's DNC provision prohibits for one year the telephone solicitation of anyone who indicates that he or she does not want to be called. *See* Wash. Rev.Code § 80.36.390(3)(a). The definition of "telephone solicitation" is nearly identical to that of "commercial solicitation" discussed above. *Compare* Wash. Rev.Code § 80.36.390(1) *with* Wash. Rev.Code § 80.36.400(1)(b).

We have no guidance from the Washington courts on how Washington interprets these provisions. The text of the WADAD is substantially similar to its federal counterpart, as is its purpose. *See* Wash. Rev.Code § 80.36.400 notes (1986). We therefore apply the same reasoning as discussed above and find that the instant calls violated the WADAD's prohibition on automated solicitation, the WCPA, and Washington's DNC provision.

*Rule 56 Claim*

In light of our reversal, we need not reach Chesbro's remaining claim regarding the denial of a continuance.

***5** In sum, these calls were aimed at encouraging listeners to engage in future commercial transactions with Best Buy to purchase its goods. They constituted unsolicited advertisements, telephone solicitations, and telemarketing, and were prohibited by the TCPA, the WADAD, and the WCPA.

REVERSED and REMANDED.

C.A.9 (Wash.),2012.
Chesbro v. Best Buy Stores, L.P.
--- F.3d ----, 2012 WL 4902839 (C.A.9 (Wash.)), 12 Cal. Daily Op. Serv. 11,702, 2012 Daily Journal D.A.R. 14,361

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.