**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GARY HANLEY on behalf of himself and others similarly situated,<br>    Plaintiff,<br><br>    v.<br><br>GREEN TREE SERVICING, LLC,<br>    Defendant. | 1:12-cv-4158<br><br>Judge Castillo<br>Magistrate Judge Rowland<br><br>JURY DEMANDED |

**PLAINTIFF'S MOTION FOR LEAVE TO SUBMIT ADDITIONAL AUHTORITY
IN OPPOSITION TO GREEN TREE'S MOTION TO DISMISS**

Plaintiff respectfully requests that this Court permit him leave to submit the attached FCC declaratory ruling in further support of his opposition to Green Tree's motion to dismiss.

In support of this motion, plaintiff states:

1. This is a Telephone Consumer Protection Act, 47 U.S.C. §227(b)(1)(A)(iii) case arising out of Green Tree's use of an "automatic telephone dialing system" and artificial or prerecorded voice to call plaintiff's cellular telephone.

2. Green Tree has filed a Rule 12 motion, arguing that dismissal is appropriate because plaintiff provided his cellular telephone number to it, thereby (according to Green Tree) consenting to receive autodialed/prerecorded calls in perpetuity.[1] Plaintiff's argument in response is that he revoked consent to receive autodialed calls, and that calls after such revocation were impermissible. Green Tree contends that revocation is not possible under the TCPA, or at least that revocation must be in writing in order to be effective.

---

[1] Green Tree's motion also improperly asks for dismissal of the entire case based upon an affirmative defense that it has not yet raised in the pleading, and documents extraneous to the complaint.

3. A few days ago, on November 29, 2012, the Federal Communications Commission issued *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Declaratory Ruling as to Petition of SoundBite Communications, Inc.*, CG Docket No. 20-278 (Nov. 29, 2012) ("*SoundBite Ruling*"), attached hereto.

4. The threshold issue before the FCC was whether consumers who consent to receive text messages sent with an "automatic telephone dialing system" may effectively revoke that consent. The FCC unequivocally held that consumers may do so.

5. The next issue before the FCC was whether companies may send a confirmatory text message to consumers who ask not to receive any more calls. The FCC held that such messages are permissible pursuant to the consumer's original prior express consent, as long as only one confirmatory text is sent within five minutes of receipt of revocation, and the message does not contain an advertisement. *SoundBite Ruling* at ¶11.

6. The FCC's SoundBite Ruling also directly addresses, with approval, whether oral revocation of consent to receive robodialed *telephone* calls is effective:

> Unlike requests to stop receiving voice calls, which can be confirmed during the same call in which a consumer has expressed a desire to opt out, confirmation of a request to stop text messages necessarily requires a two-part exchange between the consumer and the sender of such messages. As a result, such confirmation can only be made after the consumer's opt-out request, in a separate and final text message.

Id. at ¶ 13.

7. Plaintiff respectfully submits that the *Soundbite* ruling is directly applicable to this case because it interprets the precise statutory paragraphs regarding "prior express consent" that are at issue here. 47 U.S.C. §227(b)(1)(A)(iii); *CE Design, Ltd. v. Prism Business*

*Media, Inc.*, 606 F.3d 443, 446-47 (7th Cir. 2010). Even if only persuasive, *SoundBite* provides powerful authority in support of plaintiff's position that consent may be revoked.

WHEREFORE, plaintiff respectfully requests that this Court permit him leave to submit the attached FCC declaratory ruling in further support of his opposition to Green Tree's motion to dismiss.

Respectfully submitted,

/s/Alexander H. Burke

Alexander H. Burke
**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com

**Before the
Federal Communications Commission
Washington, D.C. 20554**

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| Rules and Regulations Implementing the | ) | CG Docket No. 02-278 |
| Telephone Consumer Protection Act of 1991 | ) | |
| | ) | |
| SoundBite Communications, Inc. | ) | |
| Petition for Expedited Declaratory Ruling | ) | |

**DECLARATORY RULING**

**Adopted: November 26, 2012**            **Released: November 29, 2012**

By the Commission: Commissioner Pai issuing a statement.

## I. INTRODUCTION

1. In this Declaratory Ruling, we grant a request by SoundBite Communications, Inc. (SoundBite) and confirm that sending a one-time text message confirming a consumer's request that no further text messages be sent does not violate the Telephone Consumer Protection Act (TCPA) or the Commission's rules as long as the confirmation text has the specific characteristics described in the petition.[1] Our ruling will allow organizations that send text messages to consumers from whom they have obtained prior express consent to continue the practice of sending a final, one-time text to confirm receipt of a consumer's opt-out request—a widespread practice among businesses, non-profit organizations, and governmental entities, which many parties in this proceeding, including a consumer group, assert is good consumer policy.[2] We emphasize that our ruling applies only when the sender of text messages has obtained prior express consent, as required by the TCPA and Commission rules, from the consumer to be sent text messages using an automatic telephone dialing system or "autodialer."[3] Today's ruling ensures that wireless consumers will continue to benefit from the TCPA's protection against unwanted autodialed texts, while giving them certainty that their opt-out requests are being successfully processed.

## II. BACKGROUND

### A. Telephone Consumer Protection Act

2. In 1991, Congress enacted the TCPA in an effort to address a growing number of telephone marketing calls and certain practices thought to be an invasion of consumer privacy and a risk

---

[1] The TCPA is codified at section 227 of the Communications Act of 1934, as amended. *See* 47 U.S.C. § 227. The Commission may issue a declaratory ruling "terminating a controversy or removing uncertainty." 47 C.F.R. § 1.2.

[2] *See, e.g.*, Consumer Action Comments at 2; MMA Comments at 1-2; Verizon Comments at 7; American Bankers Reply Comments at 1-4; Neustar Reply Comments at 4; *see also* Letter from Monica S. Desai, Counsel for SoundBite, to Marlene H. Dortch, Secretary, FCC, dated June 8, 2012, filed in CG Docket No. 02-278.

[3] The Commission requires prior express consent to be obtained in writing for autodialed telemarketing calls made to wireless numbers. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 27 FCC Rcd 1830 at 1837, para. 18 (2012) (*2012 Robocalls Order*). For non-telemarketing calls, the required consent may be obtained orally or in writing. *Id.* at 1841, para. 28.

to public safety.[4] In relevant part, the TCPA and our implementing rules prohibit the use of autodialers[5] to make non-emergency calls without prior express consent to, among others, any telephone number assigned to mobile telephone services.[6] The Commission has concluded that the TCPA's prohibition on autodialers encompasses both voice and text calls, including short message service (SMS) calls.[7]

### B. SoundBite Petition

3. On February 16, 2012, SoundBite filed a petition seeking a declaratory ruling that sending a one-time text message confirming a consumer's request that no further text messages be sent is not a violation of the TCPA or the Commission's rules.[8] SoundBite sends text messages on behalf of a number of companies that have obtained express consent to send texts to particular wireless subscribers.[9] SoundBite asserts that wireless carriers, aggregators, and CTIA require it to follow the Mobile Marketing Association's (MMA) best practices before they will enable and allow text message campaigns on wireless networks.[10] These best practices include the transmission of a text message to a subscriber confirming receipt of that subscriber's request to opt-out of receiving future text messages.[11] As a result, SoundBite indicates that when a consumer sends a text message opting-out of receiving future text messages, a one-time reply is sent back via text message to that customer confirming receipt of the opt-out request.[12]

4. SoundBite states that its one-time confirmation text messages are sent within minutes of receipt of the opt-out request and are sent only to those consumers making an opt-out request.[13] SoundBite argues that these confirmation text messages do not violate the TCPA or Commission rules.

---

[4] *See* 47 U.S.C. § 227.

[5] Under the TCPA, the term "automatic telephone dialing system" or "autodialer" is defined as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id.* § 227(a)(1). The Commission has emphasized that this definition covers any equipment that has the specified *capacity* to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14092, para. 133 (2003) (*2003 TCPA Order*). The Commission has, for example, concluded that the scope of that definition encompasses "hardware [that], when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers," in light of, among other things, its conclusion that "the purpose of the requirement that equipment have the 'capacity to store or produce telephone numbers to be called' is to ensure that the prohibition on autodialed calls not be circumvented." *Id.* at 14091-93, paras. 131, 133.

[6] 47 U.S.C. § 227(b)(1)(A); 47 C.F.R. § 64.1200(a)(1)(iii).

[7] *See 2003 TCPA Order*, 18 FCC Rcd at 14115, para. 165.

[8] *See* SoundBite Communications Inc., Petition for Expedited Declaratory Ruling, CG Docket No. 02-278, filed Feb. 16, 2012 (SoundBite Petition).

[9] *Id.* at 2. SoundBite indicates that they provide text messaging services for approximately 400 end-user clients including many banks, utilities, and retailers.

[10] *Id.* at 3.

[11] *Id.*; *see also* Mobile Marketing Association, U.S. Consumer Best Practices, Version 6.0, § 1.6-4 ("When STOP, or any of the opt-out keywords above, is sent to a program, the program must respond with an MT [mobile-terminated] message, whether or not the subscriber is subscribed to the program"), *available at* http://mmaglobal.com/bestpractices.pdf (visited July 31, 2012).

[12] SoundBite Petition at 2. Consumers can simply text "STOP" or a similar message to opt-out of future messages. *Id.* at 6.

[13] *Id.* at 3.

Specifically, SoundBite contends that it does not use an automatic telephone dialing system, as defined by the TCPA, to send such text messages because the software used to send the confirmation text does not have the capacity to store or produce telephone numbers to be called using a random or sequential number generator to dial such numbers.[14] In addition, SoundBite contends that, even if the confirmation texts are considered to be autodialed calls, the Commission should nonetheless recognize a "grace period" to effectuate opt-out requests from consumers who have provided prior express consent to receive text messages.[15] SoundBite notes that the Commission allows similar grace periods in the case of telemarketing calls.[16]

　　　　5.　　SoundBite also asserts that opt-out confirmations are consistent with good consumer policy and promote the public interest.[17] SoundBite notes that the MMA, in conjunction with all major mobile carriers in the United States, emphasizes that opt-out confirmations are a consumer friendly practice[18] and that opt-out confirmation texts are widely used by both commercial and non-commercial entities.[19] Moreover, SoundBite argues that the TCPA was enacted to protect the public from unwanted privacy intrusions and disruptions to essential public safety services caused by random or sequential number generators and that none of these concerns are implicated by prompt and targeted confirmation text messages.[20] SoundBite indicates that, at the time it filed its petition, it was the subject of class action lawsuits based on the transmission of confirmation text messages.[21]

　　　　6.　　On March 30, 2012, the Commission issued a Public Notice seeking comment on the issues raised in SoundBite's petition.[22] Several comments on the petition were filed.[23] The majority of commenters, including one consumer group, support SoundBite's request.[24] These commenters contend that the transmission of such confirmation messages ensures that the consumer has evidence that the consumer's opt-out request is being processed and that the consumer will receive no further text messages from the sender.[25] In addition, some commenters indicate that such confirmation messages provide an important consumer protection function, especially in cases where the consumer is opting out of receiving important informational messages, such as text alerts that prevent fraud, protect against defaults and foreclosures, and warn about disasters,[26] insofar as the confirmation messages help to ensure that it is

---

[14] *Id.* at 6.

[15] *Id.* at 4-5.

[16] *Id.* at 4-5 ("The Commission allows telemarketers up to 30 days after an opt-out request is made to remove the phone numbers from their systems.").

[17] *Id.* at 7.

[18] *Id.* at 7-8.

[19] *See* SoundBite Comments at Exhibit A.

[20] SoundBite Petition at 8-9.

[21] *Id.* at 1.

[22] *See Consumer and Governmental Affairs Bureau Seeks Comment on Petition for Expedited Declaratory Rulemaking from SoundBite Communications Inc.*, CG Docket No. 02-278, Public Notice, 27 FCC Rcd 3097 (CGB 2012).

[23] *See* Appendix.

[24] *See, e.g.*, Consumer Action Comments at 2; CTIA Comments at 3-9; Verizon Comments at 5-9; American Bankers Reply Comments at 2-5.

[25] *See, e.g.*, Consumer Action Comments at 2; MMA Comments at 1-2; Verizon Comments at 7; American Bankers Reply Comments at 2-3; Neustar Reply Comments at 4.

[26] We note that the TCPA's restriction on the use of autodialers to contact wireless numbers recognizes an exemption for such calls made for emergency purposes which would include disaster alerts. In these situations, such

(continued . . .)

actually the subscriber making the opt-out request.[27] A few commenters object to the petition on the grounds that confirmation text messages may be costly to the recipients.[28] These commenters also argue that such texts violate the TCPA because, they contend, prior express consent to receive any text messages from the particular sender is revoked by the consumer upon sending an opt-out request.[29]

### III.    DISCUSSION

7.    We grant SoundBite's request for a declaratory ruling on somewhat different grounds than proposed in the petition.[30] In particular, we confirm that one-time texts confirming a request that no further text messages be sent does not violate the TCPA or the Commission's rules as long as the confirmation text has the specific characteristics described in SoundBite's petition.[31] As noted above, the TCPA and Commission rules require that the sender of autodialed text messages obtain the prior express consent of the receiving party before sending such messages. For confirmation texts of the type SoundBite describes, we conclude that a consumer's prior express consent to receive text messages from an entity can be reasonably construed to include consent to receive a final, one-time text message confirming that such consent is being revoked at the request of that consumer.

8.    In resolving SoundBite's petition, we consider whether "prior express consent" within the meaning of section 227(b)(1)(A) is revoked when the consumer sends an opt-out request or whether such consent extends to a text message confirming that the consumer has opted-out from further text messages.[32] As an initial matter, we note that neither the text of the TCPA nor its legislative history directly addresses the circumstances under which prior express consent is deemed revoked. Where a statute's plain terms do not directly address the precise question at issue and the statute is ambiguous on the point, the Commission can provide a reasonable construction of those terms.[33] In interpreting the TCPA's restriction on calls to wireless phones, the Commission has previously looked to the House report on what ultimately became section 227, which stated that "'[t]he restriction on calls to emergency lines, pagers, and the like does not apply when the called party has provided the telephone number of such

---

(Continued from previous page)
automated calls can be made without first obtaining the consumer's prior express consent. Should a consumer erroneously opt-out from receiving such important notifications, however, he or she would likely still find a confirmation message useful to correct that situation.

[27] *See, e.g.*, American Bankers Reply Comments at 2-4 (noting that text messages can include important information relating to the consumer's bank accounts, credit cards, and other useful sources of information); CTIA Comments at 10; FPF Comments at 3-4 (text messages include payment reminders, fraud alerts, account updates and other services to protect user privacy and prevent identity theft).

[28] *See, e.g.*, NACA Comments at 6-7; Gerald Roylance Comments at 6; Joe Shields at 6.

[29] *See, e.g.*, NACA Comments at 3-4; Gerald Roylance Comments at 2-4; Joe Shields Comments at 2, 5; Robert Biggerstaff Reply Comments at 1-3.

[30] As noted, SoundBite contends that it does not use an autodialer to send confirmation messages, or alternatively that such messages fall within a grace period to effectuate the opt-out request. *See supra* para. 4. We conclude, however, that a consumer's prior express consent to receive autodialed text messages encompasses consent to receive a final one-time text message without reaching these arguments. *See infra* paras. 8, 9 and 13.

[31] As discussed in greater detail below, these characteristics include confirmation texts that:  1) merely confirm the consumer's opt-out request and do not include any marketing or promotional information; and 2) are the only additional message sent to the consumer after receipt of the opt-out request. *See infra* para. 11. *Cf. Ibey v. Taco Bell Corp.*, Case No. 12-CV-0583-H (WVG) (S.D. Cal. 2012) (holding, on other grounds, that "sending a single, confirmatory text message in response to an opt-out request from Plaintiff, who voluntarily provided his phone number by sending the initial text message, does not appear to demonstrate an invasion of privacy contemplated by Congress in enacting the TCPA").

[32] 47 U.S.C. § 227(b)(1)(A).

[33] *See, e.g.*, *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

a line to the caller for use in normal business communications.'"[34] The House report went on to cite as examples of normal business communications that are "expected or desired . . . between businesses and their customers" messages that "advise a customer (at the telephone number provided by the customer) that an ordered product had arrived, a service was scheduled or performed, or a bill had not been paid."[35] As explained in greater detail below, we find it reasonable to conclude that opt-out confirmation text messages with the characteristics discussed below appropriately are considered part of the opt-out process, informing consumers that "a service was scheduled or performed" and are normal communications "expected or desired" between consumers and the entities to which they provided prior express consent to receive text messages. We thus conclude that our interpretation, in the specific circumstances at issue here, is consistent with the goals and objectives of the TCPA.

　　　　　9.　　　The available evidence regarding consumer expectations likewise supports the conclusion that a consumer's prior express consent to receive text messages from an entity can be construed to include consent to receive a final, one-time text message confirming that such consent has been revoked. Commenters, including organizations representing consumers, are divided on this issue.[36] The record, however, reflects that the sending of one-time confirmation texts is a widespread practice among various businesses, governmental entities, and non-profit organizations.[37] In light of the widespread use of confirmation texts, we would expect consumers to complain about receiving confirmation texts if they had not consented to them as part of providing their original express consent to receive text messages. Our review of consumer complaints, however, indicates that consumers have not complained about receiving confirmation texts.[38] In fact, our review shows that at least some consumers complain about *not* receiving a confirmation text after sending an opt-out request from receiving further text messages.[39] We believe this supports the conclusion that consumers expect that their prior express consent includes

---

[34] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Request of ACA International for Clarification and Declaratory Ruling*, Declaratory Ruling, 23 FCC Rcd 559, 564, para. 9 (2008) (*ACA Declaratory Ruling*) (quoting House Report 102-317, 1st Sess., 102nd Cong. (1991) at 17). We note that the legislation discussed in that House report would have codified, as new section 227(b)(4), restrictions on calls: "(A) to any emergency telephone line or pager of any hospital, medical physician or service office, health care facility, or fire protection or law enforcement agency; or (B) to any telephone number assigned to paging, specialized mobile radio, or cellular telephone service." H. Rep. 102-317 at 3. In summarizing these restrictions, the House report subsequently referred simply to "use [of] an automatic dialing system to make unsolicited calls to any emergency telephone line or pager of any hospital, medical physician or service office, health care facility, or fire protection or law enforcement agency," and it is in that context that the statement quoted in the text above arose. However, notwithstanding the narrower initial summary of the relevant requirements, the House report stated that it was explaining "[t]he restriction on calls to emergency lines, pagers, *and the like*," suggesting that its focus went beyond the restriction on calls to emergency lines and pagers, and also encompassed the restriction on calls to other wireless numbers. *Id*. at 15 (emphasis added). Consistent with the Commission's prior reliance on the cited portion of the House report, we thus believe it appropriately informs our interpretation of the restrictions on calls to wireless numbers in section 227(b)(1)(A)(iii), as well.

[35] H. Rep. 102-317 at 17.

[36] *See, e.g.*, Consumer Action Comments at 2; CTIA Comments at 3-9; Verizon Comments at 5-9; American Bankers Reply Comments at 2-5. *But see* NACA Comments at 6-7; Gerald Roylance Comments at 6; Joe Shields at 6.

[37] *See, e.g.*, MMA Comments at 2; SoundBite Comments at 3; American Bankers Reply Comments at 2.

[38] A review of complaints received from July 2011 to July 2012 did not reveal any complaints about the receipt of a confirmation text message in response to an opt-out request.

[39] *See, e.g.*, IC 11-T00735402-1 (consumer states that s/he texted STOP several times and never received a response); IC 11-T00829672-1 (consumer complains s/he received no response received after sending a STOP request); IC 12-T00941406-1 (consumer complains that texting entity refuses to acknowledge opt-out request); IC 11-T00808614-1 (consumer complains that s/he received no response to STOP request).

consent not just to the receipt of texts but also the process for opting-out of those text messages, including the receipt of a confirmation message. In addition to constituting an element of the opt-out process, opt-out confirmation texts are critical to the purposes of the underlying, ongoing text messages that the consumers originally elected to receive. For example, confirmation that a consumer no longer wishes to receive fraud prevention alerts on bank accounts ensures that the opt-out request did not come from a third party seeking to stop such texts to conceal fraudulent activities.[40] As a result, we believe our conclusion that a consumer's prior express consent can be reasonably construed to include consent to receive a confirming text is supported by the best available evidence from consumers themselves.

10. Although a few commenters contend that the sending of confirmation messages is unnecessary and will impose unwanted costs upon consumers, we find that any such costs are outweighed by the benefits that consumers derive from such messages.[41] The record demonstrates that, whether or not texts impose some incremental cost on consumers, such confirmation messages ultimately benefit and protect consumers by helping to ensure, via such confirmation, that the consumer who ostensibly opted out in fact no longer wished to receive text messages from entities from whom the consumer previously expressed an affirmative desire to receive such messages.[42] In addition, without confirmation, a consumer may be uncertain whether his or her request was successfully processed and unnecessarily spend time and resources trying to find out.[43] As noted, text messages can include important information relating to the consumer's bank accounts, credit cards, and other useful sources of information such as disaster alerts. For these reasons, we find that the sending of a one-time confirmation text message with the characteristics discussed below promotes the TCPA's goals of protecting consumer privacy and promoting public safety.[44] In addition, we note than many wireless providers offer unlimited texting plans and that many consumers subscribe to those plans.[45] These consumers will incur no additional monetary cost from one additional text message confirming their request to opt out from future messages. For the reasons discussed above, we believe that even in the limited situations where consumers may incur some costs or inconvenience from the receipt of a confirmation message, the benefits of a tangible

---

[40] *Cf. Implementation of the Telecommunications Act of 1996; Telecommunications Carriers' Use of Customer Proprietary Network Information and Other Customer Information; IP-Enabled Services*, Report and Order and Further Notice of Proposed Rulemaking, 22 FCC Rcd 6927, 6942, para. 24 (2007) (requiring "carriers to notify customers immediately of certain account changes" including through voicemail or text messages as "an important tool for customers to monitor their account's security," helping protect against "data brokers that might otherwise manage to circumvent the authentication protections we adopt in this Order, and to take appropriate action in the event of pretexter activity" and to "empower customers to provide carriers with timely information about pretexting activity").

[41] *See, e.g.*, NACA Comments at 6-7; Gerald Roylance Comments at 6; Joe Shields at 6.

[42] *See, e.g.*, Consumer Action Comments at 2; CTIA Comments at 9; GroupMe Comments at 3; MMA Comments at 1-2; RILA Comments at 1; Verizon Comments at 7.

[43] *See, e.g.*, Consumer Action Comments at 2; GroupMe Comments at 3; MMA Comments at 3.

[44] *See, e.g.*, American Bankers Reply Comments at 2-4 (noting that informational text messages can include alerts that protect against disasters); FPF Comments at 3-4.

[45] *See, e.g.*, Letter from Indra Sehdev Chalk, Counsel for T-Mobile, to Marlene H. Dortch, Secretary, FCC, dated Sept. 7, 2011 in CG Docket 10-207, Attachment at 9 ("Most T-Mobile customers opt for unlimited text messaging plans."); AT&T Bill Shock Comments at 16 (CG Docket 10-207) filed Jan. 10, 2011 (confirming availability of unlimited texting plan); Sprint Bill Shock Comments at 8 (CG Docket No. 10-207) filed Jan. 10, 2011 (confirming unlimited texting plan); Verizon Bill Shock Comments at 7 (CG Docket No. 10-207) filed Jan. 10, 2011 (confirming unlimited texting plan). Verizon Wireless recently announced as part of its "Share Everything Plan" that it is dropping virtually all traditional plans and moving toward unlimited voice and text plans. *See* http://solutions.vzwshop.com/shareeverything/?cmp=KNC-58100000004897908 (visited July 19, 2012).

Case: 1:12-cv-04158 Document #: 40 Filed: 12/05/12 Page 10 of 14 PageID #:175

Federal Communications Commission    FCC 12-143

receipt that their opt-out request has been received and processed outweigh any burden from the receipt of one additional text message.[46]

11.    Although we interpret section 227 as not barring entities from sending certain confirmation text messages, we acknowledge that consumer consent to receive these messages is not unlimited.[47] To ensure that confirmation texts are consistent with the TCPA's goal of protecting consumers from unwanted autodialed communications, we clarify that our holding regarding a consumer's express consent to receive confirmation texts is limited to texts that: 1) merely confirm the consumer's opt-out request and do not include any marketing or promotional information; and 2) are the only additional message sent to the consumer after receipt of the opt-out request. In addition, the record in this proceeding reflects that such confirmation text messages can be sent within minutes of receipt of an opt-out request.[48] If the confirmation text is sent within five minutes, it will be presumed to fall within the consumer's prior express consent. If it takes longer, however, the sender will have to make a showing that such delay was reasonable, and the longer this delay, the more difficult it will be to demonstrate that such messages fall within the original prior consent.[49] Given the factors that persuade us that opt-out confirmation texts with the characteristics described above fall within the scope of consumers' prior express consent to receive texts, circumstances that deviate in material ways are unlikely to be encompassed by that consent.

12.    A consumer's prior express consent, therefore, is limited to a confirmation text message which confirms receipt of the consumer's opt-out request, and does not contain marketing, solicitations, or an attempt to convince the consumer to reconsider his or her opt-out decision. We will review questionable confirmation texts on a case-by-case basis. On the one side, we believe that confirmation texts that include contact information or instructions as to how a consumer can opt back in fall reasonably within consumer consent. On the other, texts that clearly contain marketing or promotional materials (such as "your request to opt-out of future messages will be honored but we are offering you a 10% discount on our products") and texts that encourage consumers to call or otherwise contact the sender in an attempt to market, including such texts that, while neutral on their face, lead to a marketing message if the consumer contacts the sender, are likely beyond the scope of the consumer's prior consent. We will monitor consumer complaints and take appropriate action if senders are using confirmation texts as an additional opportunity to market. Moreover, after sending an opt-out request, no text messages other than one confirmation of the opt-out request is encompassed within the consumer's prior express consent.[50]

---

[46] Such a receipt can also be useful to the Commission and courts in reviewing alleged TCPA violations to determine whether an entity that is alleged to have violated section 227 sent additional text messages after revocation of prior express consent by the consumer has been confirmed. For example, evidence showing that an opt-out request was sent may not establish when that request was received. The confirmation text will establish a clearer timeframe of events for this purpose.

[47] Although the record does not clarify if there are situations in which consumers are provided a means to expressly withhold consent to receive opt-out confirmation, we believe that the consumer's consent to receive text messages would be fully revoked in that situation upon the sending of an opt-out request and the prior express consent would not extend to a confirmation message.

[48] *See* SoundBite Comments at 8.

[49] While neither SoundBite nor commenters propose a specific time by which consumers should receive the confirmation text, we believe five minutes represents a reasonable outer bound and delay beyond that raises a strong likelihood that it is not within the scope of consumer consent.

[50] We acknowledge and encourage some entities' current practice of explicitly notifying consumers when they initially consent to be contacted by text message that opting into a text campaign means that they are also consenting to a final confirmation text when they opt out.

7

Entities that send opt-out confirmation text messages will bear the burden to show that their messages are consistent with these characteristics or otherwise encompassed by prior express consent.[51]

13.     We emphasize that our finding that a one-time confirmation message after receipt of a consumer's opt-out request does not violate the TCPA or Commission rules is limited to a confirmation text, and does not extend to a follow-up confirmation voice call.  Unlike requests to stop receiving voice calls, which can be confirmed during the same call in which a consumer has expressed a desire to opt out, confirmation of a request to stop text messages necessarily requires a two-part exchange between the consumer and the sender of such messages.  As a result, such confirmation can only be made after the consumer's opt-out request, in a separate and final text message.

14.     Because we have concluded that a consumer's prior express consent to receive autodialed text messages from an entity encompasses consent to receive a final one-time text message, which has the characteristics noted above, we need not address SoundBite's arguments that it is not using an autodialer, as defined by the TCPA, to send such messages or that such confirmation messages fall within a grace period to effectuate opt-out requests.  Our ruling confirms that even if SoundBite is using an autodialer to send text messages like those described above, the transmission of such text messages is permissible under the TCPA because recipients of these texts have given prior express consent within the meaning of section 227.  We thus decline to address SoundBite's additional arguments.

15.     As noted above, the TCPA and the Commission's rules prohibit any person from making a non-emergency call using an automatic telephone dialing system to any telephone number assigned to a mobile telephone service without the prior express consent of the called party.[52]  We emphasize that our ruling herein is limited to those situations in which a consumer has previously provided such prior express consent to be sent text messages from the sender and later receives a text confirming a request to opt-out of future messages that has the above characteristics.  Thus, our ruling has no impact on the TCPA's broad prohibition against sending autodialed text messages in cases where the sender has not obtained the consumer's prior express consent in the first instance.

---

[51] To the extent that a consumer's prior express consent directly addressed opt-out confirmation texts and expressly consented to opt-out confirmation texts with characteristics other than those described here, that would be evidence that the consumer otherwise had given prior express consent for such texts.

[52] *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 1200(a)(1)(iii).

8

IV. **ORDERING CLAUSE**

  16.  Accordingly, IT IS ORDERED, pursuant to sections 1-4 and 227 of the Communications Act of 1934, as amended, 47 U.S.C. §§ 151-154, 227, and section 1.2 of the Commission's rules, 47 C.F.R. § 1.2, that the Petition for Declaratory Ruling filed by SoundBite Communications, Inc. in CG Docket No. 02-278 on February 16, 2012, IS GRANTED to the extent set forth herein and IS OTHERWISE DISMISSED.

  17.  IT IS FURTHER ORDERED that this Declaratory Ruling shall be effective upon release.

              FEDERAL COMMUNICATIONS COMMISSION


              Marlene H. Dortch
              Secretary

# APPENDIX

### List of Commenters

The following parties filed comments in response to the March 30, 2012 Public Notice (CG Docket 02-278):

| Commenter | Abbreviation |
|---|---|
| **American Bankers Association and Consumer Bankers Association** | **American Bankers** |
| **Robert Biggerstaff** | **Biggerstaff** |
| Consumer Action | Consumer Action |
| CTIA – the Wireless Association | CTIA |
| Future of Privacy Forum | FPF |
| GroupMe, Inc. | GroupMe |
| Mobile Marketing Association | MMA* |
| National Association of Consumer Advocates | NACA |
| **Neustar** | **Neustar** |
| William E. Raney | Raney |
| Retail Industry Leaders Association | RILA |
| Gerald Roylance | Roylance* |
| Joe Shields | Shields* |
| SoundBite Communications, Inc. | SoundBite* |
| Twilio Inc. | Twilio* |
| Varolii Corporation | Varolii |
| Verizon and Verizon Wireless | Verizon |
| WMC Global | WMC |

  * filing both comments and reply comment (bold - reply comments only).

# STATEMENT OF
# COMMISSIONER AJIT PAI

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; SoundBite Communications, Inc. Petition for Expedited Declaratory Ruling, CG Docket No. 02-278*

In regulation, as in sports, it is good to have clear rules.[1] As I stated in a speech before the U.S. Chamber of Commerce back in September, ambiguities about what's prohibited and what's allowed under FCC rules interpreting the Telephone Consumer Protection Act have forced businesses to guess where their legal obligations lie.[2] The subject of today's order—the Act's application to opt-out confirmation texts—is case in point. In an effort to better serve consumers, many businesses send a confirmation text to consumers who opt out of receiving future communications from those businesses. This practice simply lets consumers know that their requests to opt out have in fact been received and processed.

Notably, our staff review shows that the Commission has not received a single complaint about this practice. (To the contrary, several consumers complained that they did *not* receive a confirmation text.) And yet, companies face class-action lawsuits for this innocuous conduct. These suits have threatened a host of companies across the country, from Twitter to American Express.[3] This state of affairs serves the interests of trial lawyers rather than consumers and the businesses trying to meet their needs.

No longer. Today's common-sense order ends the legal lacuna and the courtroom arbitrage it has inspired. Hopefully, by making clear that the Act does not prohibit confirmation texts, we will end the litigation that has punished some companies for doing the right thing, as well as the *threat* of litigation that has deterred others from adopting a sound marketing practice. And consumers want confirmation texts: They want the assurance that there will be no further intrusions on their privacy. In short, today's order is a win for consumers and for innovative companies alike. I am pleased to support it.

---

[1] *Cf.* Walter Sobchak, *The Big Lebowski* (Polygram Filmed Entertainment 1998) ("Smokey, this is not 'Nam. This is bowling. There are rules.").

[2] *See* Opening Remarks of Commissioner Ajit Pai at the Telecommunications & E-Commerce Committee Roundtable of the U.S. Chamber of Commerce at 3 (Sept. 14, 2012), *available at* http://go.usa.gov/gT6e.

[3] *See Moss v. Twitter, Inc.*, No. 11-CV-906 (S.D. Cal.) (dismissed without prejudice); *Maleksaeedi v. American Express Centurion Bank*, Case No. 11-CV-790 (S.D. Cal.).